IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PAUL MATHEW PARISI,            )
                               )
       Plaintiff,              )
                               )   Case No. 11 C 13
       v.                      )
                               )   The Honorable William J. Hibbler
WEXFORD HEALTH SOURCES, INC., DR. )
PARTHASARATY GHOSH, DR. LIPING )
ZHANG AND P.A. TONYA L. WILLIAMS, )
                               )
       Defendants.             )

## MEMORANDUM OPINION AND ORDER

Parisi sued three doctors working at Stateville and Wexford Health Sources, Inc., which is the health care provider for Stateville, for subjecting him to cruel and unusual punishment. The Individual Defendants raise several arguments in moving to dismiss. None of these arguments has merit. Wexford also moves to dismiss, arguing that Parisi has not sufficiently alleged an unconstitutional policy or custom.

According to Paul Parisi he was diagnosed with fibroneuroma tumors in 2001 while an inmate at the Stateville Correctional Center. Shortly thereafter, doctors removed a large nodule from Parisi's back. Beginning in August 2003, however, Parisi began experiencing additional tumors and suffering from abdominal and back pain. Parisi complained to the medical staff at Stateville and requested treatment for his tumors. According to Parisi, the medical staff, including Defendants Drs. Parthasaraty Ghosh and Liping Zhang, informed him that he would not be treated because his condition was not life threatening. In August 2003, Parisi had only 3 tumors. At present, he has

1

approximately 60. Parisi consistently complained to the Stateville Medical Staff about his condition and his pain to no avail, though a January 2011 surgery removed 3 of the 60 tumors. He filed at least four grievances, the first in September 2009.

Motions to dismiss test the sufficiency of the complaint, not the merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). The Court accepts all factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Ray v. City of Chicago*, 629 F.3d 660, 662-63 (7th Cir. 2011). Still, a plaintiff must plead sufficient facts so that the right to relief is not speculative. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed. 929 (2007). A party may plead itself out of court by pleading facts that establish an impenetrable defense to its claims. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008).

A.  *Deliberate Indifference*

The individual Defendants, Doctors Ghosh and Zhang, and Physicians Assistant Tonya Williams[1], first argue that Parisi cannot state a claim because he alleges only a disagreement with the individual Defendants over the appropriate course of treatment. An inmate must allege more than simple medical malpractice or a mere disagreement regarding the proper course of treatment to state a claim under 42 U.S.C. § 1983 based on a failure to provide medical treatment. *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). Moreover, not every refusal of medical treatment constitutes cruel and unusual punishment; prisoners are entitled only to adequate medical care. *Id.* In arguing that Parisi fails to state a claim, however, the Defendants distort his allegations, stripping them from their context and ignoring allegations that defeat their argument.

---

[1] Defendant Williams filed her motion after the other two individual Defendants and her arguments are similar to those raised by Drs. Ghosh and Zhang. The Court need not await Parisi's response brief to address them.

2

In support of their argument, the Defendants point to Parisi's allegation that Dr. Ghosh examined his tumors and concluded that they were not serious. Parisi does make such an allegation, but that allegation must be taken in the context of the entire complaint. Parisi also alleges that the individual Defendants have told him that they would not treat his condition unless it becomes life threatening and that the tumors caused him constant and serious pain. A doctor who treats an inmate with cancer by prescribing only aspirin plainly does not provide adequate medical treatment. Here, more detail is necessary to determine whether Parisi merely disagreed with Dr. Ghosh's course of treatment or whether Dr. Ghosh ignored Parisi's allegation of chronic pain. While Parisi's allegation certainly establishes the possibility that his claim is merely a dispute over the course of treatment, it does not establish an impenetrable defense. Another reasonable inference that can be drawn from the complaint is that Dr. Ghosh ignored any and all complaints from Parisi that were not "life threatening" and made only band-aid treatments. Additional factual detail is about the seriousness of Parisi's condition is necessary to determine whether a mere examination of the tumors amounts to the provision of adequate medical care.

Defendants also point to Parisi's allegation that Dr. Ghosh prescribed him ibuprofen as evidence that his claim is merely a disagreement over the course of treatment. Again, Defendants strip this allegation from its context. Parisi alleges that Dr. Ghosh prescribed the ibuprofen for an *ankle injury* and when Parisi complained about the pain caused by the tumors, Dr. Ghosh ignored that request and told Parisi that the ibuprofen would "help." Again, Parisi's allegation could be construed to support an inference that Dr. Ghosh concluded that ibuprofen was sufficient treatment of his fibroneuromatic tumors. But it also supports an inference that Dr. Ghosh merely ignored Parisi's complaints about the pain caused by the tumors and refused to provide any treatment

3

independent of the treatment for the already prescribed treatment for an ankle injury. At this stage of the litigation, the Court draws the inference in Parisi's favor, not the Defendants'.

Dr. Zhang next argues that Parisi alleges that Dr. Zhang ordered blood tests and that demonstrates that she was not deliberately indifferent to his serious medical need. But Parisi does not allege that Dr. Zhang ordered blood tests to determine the cause or severity of the tumors. Rather, Parisi alleges that the blood tests were independent from that malady. In fact, he alleges that Dr. Zhang refused to discuss the tumors but instead discussed only the blood tests' indication that he had high cholesterol. Parisi's allegations can fairly be read to infer that Dr. Zhang conducted only routine check-ups and ignored Parisi's fibroneuroma.

Finally, Williams that Parisi does complains only that Williams examined him and referred him to a specialist. This argument distorts Parisi's allegations. While Parisi does allege that Williams examined him, he further alleges that she told him that "she would be concerned" if she had the same symptoms that Parisi expressed and that she refused to provide any treatment. Further, although Parisi alleges that Williams instructed him that he would need to see a specialist, he does not allege that she referred him to any such specialist. Rather, more than six months passed between Williams' examination of Parisi and his first treatment by a specialist. Depending on the severity of his condition (which of course is a fact-intensive inquiry) that delay could support a claim for deliberate indifference.

Contrary to the Defendants' claim that Parisi alleges that they did provide treatment for his fibroneuromatic tumors, he alleges multiple times in his Second Amended Complaint that they consistently ignored his allegations of pain, refused to discuss treatment options with him and told

him that they would continue to ignore his condition until it became life threatening. That is sufficient to state a claim.

   B.   *Statute of Limitations*

Defendants Ghosh and Zhang next argue that the statute of limitations bars Parisi's claims. This argument completely lacks merit and requires little discussion. Parisi alleges that he first requested medical treatment in August 2003. As the years passed, his medical condition worsened and Drs. Ghosh and Zhang allegedly continued to ignore it. Thus, the Defendants continued refusal to treat Parisi's alleged serious medical condition constitutes a continuing violation marking "a fresh infliction of punishment that caused the statute of limitations to start running anew." *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001).

Defendants suggest that the continuing violations doctrine no longer applies once treatment is provided. *See Wilson v. Groze*, No. 09 C 7487, — F. Supp. 2d —, 2011 WL 3290289 (N.D. Ill. Aug. 1, 2011). Defendants' argument is not accurate. In *Wilson*, the court held that for the purposes of the continuing violation doctrine, a claim *accrues* when treatment is ultimately provided. *Wilson*, 2011 WL 3290289, at *5; *see also Heard*, 253 F.3d at 318 (noting that continuing violation doctrine is best thought of as governing accrual because courts do not wish for plaintiff to sue until violation is complete). But this principle gets the Defendants nowhere. Defendants point to a 2011 date on which Parisi, after 8 years of complaints, was finally referred to a specialist. Thus, his claim accrued in 2011. However, Parisi filed his claim on January 3, 2011, *before* he was referred to the specialist (that allegation was added in the Second Amended Complaint). The Defendants' argument that that the 2011 referral somehow makes Parisi's claim untimely is utter nonsense. Defendants also point to Parisi's allegation that he received treatment in 2002. But Parisi complains that from 2003-2011,

5

the Defendants refused to provide treatment, and so the 2002 diagnosis and treatment of his fibroneuroma is not part of his claim. Rather it marks a period where Parisi did receive adequate medical care, which does not somehow insulate the Defendants from later failing to provide such care for a period of eight years.

C.     *Failure to Exhaust*

In a related argument, Defendants claim that Parisi has not (and cannot) exhaust his administrative remedies. Defendants rely on 20 Ill. Admin. Code ¶ 504.810(b), 850. That paragraph requires a grievance to be filed within 60 days after the discovery of the incident given rise to the grievance. The logic of the continuing violation applies here too. If each day the Defendants refused to provide treatment constitutes a fresh infliction of punishment, then each day provides Parisi a new opportunity to file a grievance. Otherwise, once a 60-day period passed, prison officials would be free to forever disregard an inmates condition. Further, procedural defects such as failing to adhere to a filing deadline amounts to a failure to exhaust *only if* prison officials explicitly relied on that shortcoming in addressing the grievance. *Conyers v. Abitz*, 416 F.3d 580, 584-85 (7th Cir. 2005). Parisi alleges that he filed at least four grievances, but does not allege the outcome of those grievances other than that they were denied. If they were denied on the merits, it forecloses any argument that the grievances were untimely. At this stage of the litigation, the Court cannot draw an inference in favor of Defendants, and since the failure to exhaust is an affirmative defense it must be plain from the face of the Complaint. *Kincaid v. Sangamon County*, 2011 WL 2036441, at *2 (7th Cir. May 25, 2011). It is not.

D.     *Official Capacity*

6

Finally, Dr. Ghosh claims that he cannot be sued in his official capacity. State officials cannot be sued for monetary damages in their official capacity in a § 1983 suit. *Power v. Summers*, 226 F.3d 815, 818 (7th Cir. 2000). A 1983 plaintiff can, however, seek injunctive relief against a state official in his official capacity. *Power*, 226 F.3d at 819. Dr. Ghosh argues that *Power* does not apply, suggesting that where a plaintiff seeks both monetary damages and injunctive relief he cannot sue a state official in his official capacity. Dr. Ghosh grossly misinterprets that decision. *Power* stands for the proposition that where a claim appears to be one for injunctive relief, but really is one for damages, such as an injunction that is a simple order to pay, it cannot be brought against an official in his official capacity. *Power*, 226 F.3d at 820. It absolutely does not stand for the proposition that a plaintiff cannot seek monetary damages against an official in his individual capacity and injunctive relief against the official in his official capacity. Dr. Ghosh's argument to the contrary is frivolous.

E.  *Wexford Health Sources Motion*

The individual Defendants' employer, Wexford Health Sources, moves to dismiss the claim against it, arguing that Parisi has not sufficiently alleged that a policy or custom that makes it responsible for the alleged constitutional violations. A corporate entity acting under color of state law is not vicariously liable for the misdeeds of its employees. Rather, in order for such an entity to be responsible for a constitutional violation it must "maintain[ ] a policy that sanctions the maintenance of prison conditions that infringe upon the constitutional rights of prisoners. *Estate of Novack ex rel. v. County of Wood*, 226 F.3d 525, 530 (7th Cir. 2000). Parisi fails to respond to Wexford's motion. His Second Amended Complaint raises no allegations of any policy or custom of Wexford. Rather, he merely alleges that Wexford "deliberately refus[ed]" to provide him with

adequate medical care and disregarded his fibroneuroma. Those allegations are not sufficient to state a claim against Wexford.

The Court DENIES the individual Defendants' Motions in their entirety. The Court GRANTS Wexford's Motion to Dismiss the Claims against it.

IT IS SO ORDERED.

10/17/11
Dated

Hon. William J. Hibbler
U.S. District Court